**DAVID R. SILLDORF**
California Bar No. 253237
**LAW OFFICES OF DAVID R. SILLDORF, APC**
402 W. Broadway, Suite 1300
San Diego, California 92101
Telephone: (619) 326-9093
Facsimile: (619) 326-9095
Email: david@davidsilldorflaw.com

Attorney for Mr. Javier de Jesus Saturno Paz

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-01761-JLS |
| Plaintiff, | Date: August 13, 2021 |
| v. | Time: 9:00 a.m. |
| JAVIER DE JESUS SATURNO PAZ, | **SENTENCING MEMORANDUM** |
| Defendant. | |

Not a day passes that I don't feel remorseful . . . For the little bit that I was going to earn, I lost a whole bunch. Every day I feel sadder and sadder. I haven't gotten one single letter or message of support. I feel bad being somewhere that is not my country. I feel very isolated. I hope that they take into consideration that I'm young and can change myself and return to my country where it is that I want to go and start over. I feel really bad and ashamed that the U.S. has to deal with me in this matter . . . I just hope they have a little pity on me because my wife, mom, nieces, and nephews–everyone is waiting at home. I just have faith in God that I get out soon. I am not a bad person, I was just trying to earn a little bit to get ahead. I'm really sorry you had to waste your time on me. Then I just hope that you have mercy because there is not a day that goes by that I don't regret what I have done and being in here. Every night I pray to God that I don't get very much time . . . whatever time is fair . . . and I'm really anxious and desperate to get out of here. That's why I started working in the kitchen. I work hard and I like it. I get to eat there and I'm happier. If there was more jobs available, I would do them all because I want to prove that I can do things well.

–Javier de Jesus Saturno Paz

(*PSR* at 11-12, para. 39)

# I.
# Introduction

Mr. Javier de Jesus Saturno Paz submits the following sentencing memorandum in support of his sentencing recommendation. Ultimately, he requests to be sentenced to 41 months in custody.

# II.
# Background

Javier de Jesus Saturno Paz is a twenty-five-year-old Mexican citizen.[1] He has no criminal history or juvenile adjudications.[2] The last 15 months[3] he has spent in the MCC is the only time he has ever spent in the United States.

Life has not been easy for Mr. Saturno. He was born into abject poverty in the interior of Mexico. He lived in a small, remote village. His makeshift home was small. It lacked potable drinking water and toilets. To bathe, one has to use buckets from a well, or some alternative natural water source. He often went to bed hungry. His mom was forced to raise him alone as the sole provider. Mr. Saturno left school at a very young age (approximately 9) to work to help his mom.

Mr. Saturno's father reportedly did not want his mother to have him. He was unsurprisingly absent from Mr. Saturno's life growing up. His father never provided support, financial or otherwise. Mr. Saturno met his father for the first time in 2018. He has lung cancer and is "very sick."

Mr. Saturno was reticent about talking through the abuse he suffered as a young boy. The *PSR* accurately details that Mr. Saturno was sexually abused (digitally) by his mother's boyfriend Augustin; he was 5 years old at the time. Mr. Saturno told him mom

---

[1] *PSR* at 3.

[2] *PSR* at 14.

[3] Mr. Saturno will have served 437 days (actual) as of August 13, 2021.

-2- 20-CR-01761-JLS

about what happened. The boyfriend eventually fled to Guatemala after being confronted with the accusation. He was never heard from again.

The probation officer spoke with Mr. Saturno's sister, Mayra. She provided additional information on the subject that Mr. Saturno was unable to expound on during his interview. She shared the following:

> Mayra and Saturno suffered from psychological and physical abuse throughout their upbringing. Since their mother was single, she had 'different partners who were not the best men . . . [they] made us work and beat us.' Mayra was also sexually abused by Augustin who she said, 'hurt us the most because he was the one who beat us and made us work.' Their mom owned a small grocery store and Augustin made [Mr. Saturno] and Mayra wake up at 3 a.m. to gather wood for the oven to make the bread. Then, after school, he would make them clean the store, stock the shelves, etc.

Mayra said, "Augustin was the one who cause the most damage."

She also described Mr. Saturno as a "good, normal person" who became responsible and hard working as an adult, despite his difficult childhood. She confirmed that their family supports him, and eagerly awaits his return home. She also confirmed that his motivation to participate in the instant offense conduct was financial. She shared that he "was having the same financial hardship everybody is having . . . he had no work and no money." To his credit, Mr. Saturno does not use drugs and has only drank alcohol socially. He could not afford to use drugs or abuse alcohol, even he wanted to.

Mr. Saturno has worked for as long as he can remember. He is an expert fisherman. He reported earning approximately $150 per week, or $600 month. Some weeks he made nothing. His average yearly income was under $6,500 USD. It was because of this, that he agreed to participate in the instant offense conduct. Mr. Saturno was recruited from within his small fishing village, along with his two co-defendants. They were provided with everything they needed: a boat; a GPS device with coordinates already entered; a radio to communicate and in case of emergency; fuel; and food. They were also provided with instructions. The plan was relatively simple: rendevous with the

Ecuadorian boat out at sea, transfer the load, and bring it back to where they launched in Mexico.

The plan went awry went U.S. authorities interdicted the boats on the high seas 308 nautical miles southeast of Guerrero, Mexico. Unfortunately, Mr. Saturno was behind the wheel when this happened. He panicked, and made the regrettable decision to try and evade capture. While doing so, the steering wheel broke (the hydraulics stopped working) and he was unable to safely control the boat. They were eventually disabled by the USCG, detained, and arrested. This was on May 31, 2020. They didn't arrive in the U.S. until June 24.

Mr. Saturno was held by the USCG for 24 days (5/30-6/24) aboard the Coast Guard cutter. Unfortunately, the government has prohibited Mr. Saturno and his co-defendants from seeking any downward adjustments, departures, or variances from the Guidelines based on his transportation or detention before his initial appearance in the Southern District of California. This includes, but is not limited to, arguments based on the conditions of detention while at sea or the amount of time detained at sea before the initial appearance.[4] As a result, and in keeping with his plea agreement, Mr. Saturno is not seeking any specific relief under the Guidelines. By any objective measure, it is chilling that the government effectively gives defendants in these cases a "take it or leave it proposition": agree to be silenced on this issue, or suffer a minimum mandatory penalty. Left with little choice, Mr. Saturno agreed to silence, in order to avoid a 10-year-minimum sentence. It's little wonder the government doesn't want criminal defendants talking about the conditions either. Because they're nightmarish.

Being in jail on land is one thing. Being detained and effectively jailed at sea is an entirely different animal. Mr. Saturno was confined to what is already extremely close quarters when traveling aboard a boat. He was shackled, unable to effectively steady

---

[4] *See*, *plea agreement*, appearing at #39 on the Court's Docket.

himself aboard the high seas.  He recalls getting sick several times, and was not rendered medical assistance as days rolled by into weeks, much like the waves they seemed to be aimlessly traveling over.  By any measure, it does not take 24 days to sail from Mexico to San Diego, particularly aboard a Coast Guard Cutter.  But that's how it long this particular voyage took.  And none of it was easy.

Mr. Saturno never had any intention of ever coming to the United States.  But he finds himself here now, involuntarily present in a foreign land, speaking a foreign language, and dealing with a foreign criminal justice system.  And if his situation couldn't get worse, he contracted Covid while inside the MCC where he has been for the last 15 months.  He is regularly on lockdown, quarantine, or both.  Being in jail anywhere is hard enough.  Being locked down 23 hours a day while a virus rages both in and outside the walls of the MCC makes it unspeakably worse.

After he was caught and arrested, Mr. Saturno waived his right to an attorney and agreed to speak with agents.  He has since satisfied the government for purposes of safety valve, having truthfully disclosed the nature of his involvement in the instant offense conduct.  Needless to say, Mr. Saturno was desperate.  He was literally in need of food and money to survive.  As a simple, poor fisherman, he was an easy mark for drug traffickers.  He told probation that he was renting a little room with his wife in Mexico and woke up every day at 5:30 to go fish.  If he came home empty handed, he literally couldn't put food on their table.  He had hoped to use the money from this offer to "try and support my family because it's really hard sometimes; you can't even make enough to buy food to eat."  He had also hoped to purchase his own boat so he could be his own boss and not rely on others to fish.  Mr. Saturno regrets his decision every day he is in custody away from his family.  He is contrite and sincere when he shares that he is sorry.  He never imagined he would ever be in the United States–particularly like this.

In light of all of these factors, Mr. Saturno asks that the Court sentence him to 41-months custody.

### III.
### Advisory Guidelines Calculations

**A.     Stipulated Calculations.**[5]

A number of the guideline calculations in this case are undisputed. The parties agree to (+2) for reckless endangerment during flight, (-2) for safety valve, and (-3) for acceptance. It is anticipated that the government will recommend 96 months at the time of sentencing based on Mr. Saturno having "expeditiously resolved the case and this is his first known criminal conviction. Specifically, [Mr. Saturno] save the government significant resources by pleading guilty at the first opportunity, foregoing any substantive pre-trial motions, and waiving appeal."[6]

**B.     Other Adjustments and Departures.**

The plea agreement contemplates that Mr. Saturno may request additional adjustments, departures, and sentence reductions under 18 U.S.C. § 3553 which the government will oppose.[7] Accordingly, the Court should grant a downward adjustment of (-2) for minor role, and (-7) under Cook/Koon as a combination of circumstances or as an equivalent variance under 3553(a).

**1.     Minor Role (-2)**

Mr. Saturno should receive a downward adjustment for role. The facts demonstrate that Mr. Saturno should receive (-2) for minor role. By all accounts, Mr. Saturno was a simple courier with a very limited role in the smuggling venture. He was

---

[5]     The government has recommended both safety-valve (appearing on the Docket at #75).

[6]     *See*, government's Sentencing Summary Chart at #75 on the Docket.

[7]     *PSR* at 9.

recruited by others, he had no prior involvement in transporting **drugs**, and the offense was to be a one-time agreement. He did not recruit individuals in the drug transportation venture, harbor drugs, load drugs, or interact with the design makers in any meaningful way. (-2) accurately reflects his minor role in this offense. Second, Mr. Saturno is a criminal history category I; he has no prior convictions as this is the first time he has ever been to the United States. This factor alone might suffice to demonstrate aberrant behavior and justify a departure under the Guidelins. Third, Mr. Saturno has accepted responsibility, agreeing to plead guilty. For all of these reasons, a minus two departure for minor role is appropriate.

**2. (-7) Cook / Koon or Combination of Circumstances Departure**

The Court should depart an additional seven levels under a combination of the circumstances. Several factors support this departure. First, Mr. Saturno played a minor role in the offense, whether the Court recognizes this fact with a minus two adjustment or not. Second, as discussed above, Mr. Saturno acted out of economic duress, agreeing to this criminal activity only because he was financially destitute and literally needed money to eat. Third, Mr. Saturno is a criminal history category I. In that regard, the probation officer writes in recommending a downward variance that "[t]he defendant is 25 years old, this is his first conviction, and this writer believes significant custodial time will serve as a sufficient deterrent for him."[8] Fourth, Mr. Saturno saved the government time and resources by agreeing not to litigate any motions and to waive appeal. For all of these reasons, a minus seven departure under *Cook* and *Koon* is appropriate.

---

[8] *PSR* at 20.

## IV.

## Sentencing Under Booker and §3553

After *United States v. Booker*, the United States Sentencing Guidelines are advisory only, representing but one factor among many to be considered in imposing sentence under 18 U.S.C. § 3553(a). Here, for all of the factors described in the statement of facts and the sentencing guidelines discussion, the Court should sentence Mr. Saturno to 41 months in custody. The Supreme Court has held that "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[9]

The nature and circumstances of the defendant call for leniency. Here, Mr. Saturno found himself in an unenviable position in this high-seas (and high-stakes) case: go to trial, or take a deal without a guaranteed minor role reduction from the government—normally the single largest swing available to a defendant in a drug-trafficking case under the guidelines.

Mr. Saturno lived an entirely law-abiding life before succumbing to the financial pressures of being the sole financial provider for his family. He is a criminal history category I; he has no criminal history whatsoever. He has been law-abiding both here and abroad, never having suffered a single juvenile adjudication or felony conviction. This is by far the most time he has ever spent in custody in his life.

The facts and circumstances of this case should greatly mitigate the punishment imposed by this Court. Mr. Saturno made a mistake, one inconsistent with his history and character. He pays dearly for it every day he spends in custody. This Court should also consider his minor role, his lack of criminal history (aberrant behavior), and that he

---
[9] *Koon, supra*, at 113.

is also young with a lot of potential of becoming a productive member of society whenever he is returned back to Mexico. Mr. Saturno has accepted responsibility, has satisfied the government for safety-valve, and waived appeal. All of the factors described in the sentencing guidelines discussion support a variance under *Booker* as well. For all of these reasons, Mr. Saturno asks for a sentence of 41 months.

## V.
## Conclusion

Under all of the circumstances in this case, a sentence of 41-months custody is appropriate.

Dated: August 10, 2021
*/s/ David R. Silldorf*
**DAVID R. SILLDORF**
Attorney for Mr. Saturno